IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| THOMAS ADAMS, on behalf of himself and others similarly situated, | : : : | Case No. 3:25-cv-00087-TMR-CHG |
| | : | District Judge Thomas M. Rose |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| v. | : : : | |
| MERCHANTS SECURITY SERVICE OF DAYTON, OHIO, INC. d/b/a MERCHANTS SECURITY SERVICE | : : : : | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT-FACILITATED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS** |
| Defendant. | : | |

## I. INTRODUCTION

Plaintiff Thomas Adams ("Plaintiff") and the evidence he has set forth in support of his Motion for Court-Facilitated Notice ("Motion") falls below the heightened evidentiary standards set forth by *Clark* and the many other decisions cited by the Plaintiff. Indeed, the only evidence provided by Plaintiff are the conclusory allegations that Merchants did not pay him for the performance of pre-shift or post-shift duties and that he occasionally traveled from one security detail to another without being paid. While these same allegations are repeated by other declarants, there is no evidence demonstrating a "strong likelihood" that any of these former employees are similarly situated.

In his Motion, Plaintiff contends that he has provided evidence that "meets or exceeds" the evidence this Court and others have relied upon in making this very same decision. (Motion p. 15.) This is demonstrably false. In support, Plaintiff emphasizes the importance of the number of declarations submitted as evidence in determining whether

1

there is a strong likelihood of similarity. (*Id*. at p. 15.) However, the Southern District of Ohio has made clear that "the number of declarations presented says nothing on its own about the strength of a litigant's evidence; it is the **substance** of the declarations, not the quantity, that matters." *Polen v. JSW Steel United States Ohio, Inc.*, 699 F. Supp. 3d 622, 629 (S.D.Ohio 2023); (See also *Morrison v. Columbus Family Health Care LLC*, 672 F. Supp. 3d 524, 534 (S.D.Ohio 2023)(what matters, ultimately, is the *content* of a plaintiff's declaration speaking to the presence of a single, FLSA violating policy).

Further, *Clark* rejected the notion that courts should facilitate notice upon merely a "modest showing" or under a "lenient standard" of similarly. The granting of this Motion with only a single unsupported and conclusory allegation would undermine the Sixth Circuit's attempt to heighten the standard. Granting Plaintiff's Motion would permit plaintiffs to move forward in a collective action by merely contending that they "weren't paid" without **any** supporting evidence sufficient to meet the higher standard set by *Clark*.

This Opposition also demonstrates that Merchants' timekeeping procedures, including the method in which employees recorded their time, varied significantly throughout the last two years. These variations of Merchants' timekeeping methods create a dissimilarity among former employees as to how they recorded their time worked, including overtime and travel time. Therefore, this Motion should be denied as the Plaintiffs have not provided enough evidence to demonstrate that they were the victims of a common practice or policy in violation of the FLSA.

Finally, if the Court finds that notice is appropriate, and Merchants argues it is not, the Court should modify the Plaintiff's proposed notice as further discussed below.

## II. FACTUAL BACKGROUND

### A. Merchants Security

Merchants Security Service of Dayton, Ohio, Inc. d/b/a Merchants Security Service ("Merchants") has its headquarters located at 2015 Wayne Ave., Dayton, Ohio 45410. (*See* Declaration of Heather Wead ("Wead Dec."), attached hereto as **Exhibit A**, ¶ 2.) Merchants have provided security services to Dayton, Ohio and the surrounding region for over 122 years. (Wead Dec., ¶ 3.) In providing these services, Merchants employs a variety of hourly, non-exempt employees. (Wead Dec., ¶ 4.)

Throughout the years, Merchants has utilized various payroll and timekeeping methods and/or software. (Wead Dec., ¶ 7.) The only consistent feature of these various methods has been that employees are paid for the hours they work, and are not systematically shortchanged by not being paid for the hours they work. (*Id*.)

From approximately 2012 until February 2023, Merchants utilized a method based on software that recorded an employee's hours worked by taking direct input from employees over a dedicated phone line. (Wead Dec., ¶ 8.)

In order for an employee to clock-in or out using this software, they would call a phone number which played an automated message. (Wead Dec., ¶ 9.) When employees were prompted, they entered their employee ID number to clock-in or clock-out. (*Id*.) At no point did this timekeeping method systematically shortchange an employee by depriving them of pay for their hours worked. (*Id*.)

On or about February 2023, Merchants changed its payroll software and began using a different system to record hours worked. (Wead Dec., ¶ 10.) During this time, employees were paid utilizing a hybrid system based on work schedules and manually-

3

entered deviations from scheduled work hours.  (Wead Dec., ¶ 11.)  At no point did this timekeeping method systematically shortchange an employee by depriving them of pay for their hours worked. (*Id*.)

On or about June 2024, Merchants adopted yet another system for payroll. (Wead Dec., ¶ 12.) Under this latest system and its associated software, employees usually, but not always, clock-in and out using an application that is downloaded onto a cell phone. (Wead Dec., ¶ 13.) Some employees in some circumstances report their hours worked using other methods. (*Id*.)  At no point did this timekeeping method systematically shortchange an employee by depriving them of pay for their hours worked. (*Id*.)

Occasionally, rather than clock-in or out through one of these payroll systems that were utilized over the years, employees would simply call me and ask me to clock-in or clock-out for them when they began or finished a shift. (Wead Dec., ¶ 14.) At no point did this timekeeping method systematically shortchange an employee by depriving them of pay for their hours worked. (*Id*.)

In certain situations, Merchants guards may travel directly from one security detail to another, either during a shift or after a shift if they pick up a new shift for which they were not originally scheduled. (Wead Dec., ¶ 20.) Compensable time for travel between security details would be recorded utilizing one of the methods described above. (*Id*.)

### B.  Plaintiff and Opt-in Plaintiffs Claims

Plaintiff claims that Merchants failed to compensate him and other hourly employees for overtime worked in violation of the Fair Labor Standards Act ("FLSA"). With his Motion, Plaintiff seeks authorization of notice for a proposed collective consisting of

4

all current and former non-exempt employees who worked for Merchants on or about March 18, 2022, to the present.

Plaintiff Thomas Adams was employed by Merchants from approximately August 2023 until April 2024. (Wead Dec., ¶ 15.) During his employment, his hours of work were recorded and paid by utilizing the timekeeping systems described above. (*Id*.)

Patrick Fryman was employed by Merchants from approximately June 2023 until October 2024. (Wead Dec., ¶ 16.) During his employment, his hours of work were recorded and paid by utilizing the timekeeping systems described above. (*Id*.)

Savonne Hagans was employed by Merchants from approximately August 2022 until October 2023. (Wead Dec., ¶ 17.) During his employment, his hours of work were recorded and paid by utilizing the timekeeping systems described above. (*Id*.)

Richard Davis was employed by Merchants from approximately December 2014 until September 2024. (Wead Dec., ¶ 18.) During his employment, his hours of work were recorded and paid by utilizing the timekeeping systems described above. (*Id*.)

Chyna Harmon was employed by Merchants from approximately August 2022 until April 2023. (Wead Dec., ¶ 19.) During her employment, his hours of work were recorded and paid by utilizing the timekeeping systems described above. (*Id*.)

## III. LEGAL STANDARD

In determining whether a plaintiff's evidence warrants issuance of notice, courts must be mindful to avoid "stirring up" litigation through "unwarranted solicitation" and ensure that "employers are not unduly burdened by frivolous fishing expeditions." *Thompson v. RGT Mgmt., Inc*., No. 2:11-CV-02573-AJT, 2012 WL 3261059, at *2 (W.D. Tenn. June 8, 2012).

The Sixth Circuit in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023) fundamentally and significantly altered the standard required in determining whether court-authorized notice is appropriate in collective actions. *Jones v. Ferro Corp.*, No. 1:22-cv-00253-JDA, 2023 WL 4456815, at *3 (N.D. Ohio July 11, 2023) Case: 2:22-cv-00694-EAS-KAJ Doc #: 78 Filed: 11/30/23 Page: 6 of 21 PAGEID #: 1155 7 (*Clark* "substantially altered the standards governing collective actions under the FLSA in this Circuit"); *McElroy v. Fresh Mark, Inc.*, No. 5:22-CV-287, 2023 WL 4904065, at *3 (N.D. Ohio Aug. 1, 2023) ("[T]he court of appeals 'changed the approach courts in the Sixth Circuit must now take in managing . . . actions under the [FLSA].'").

In *Clark*, the court rejected the concept of "conditional certification" of a "collective" whereby court-facilitated notice may be issued to potential plaintiffs "upon merely a 'modest showing' or under a 'lenient standard' of similarity." *Clark*, 68 F.4th at 1010. The court explained that the decision to facilitate notice "is analogous to a court's decision whether to grant a preliminary injunction" in that the notice determination undisputedly includes "the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision." *Id*. at 1010-11. Accordingly, the court held that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id*. at 1011 (citation omitted). Thus, while *Clark* did not re-define what it means to be "similarly situated," the Sixth Circuit's ruling did heighten a plaintiff's burden to show that issuance of notice to a putative collective is appropriate and warranted.

6

Whether employees are similarly situated for the purpose of joining an FLSA suit depends on whether they performed the same tasks and were subject to the same policies— as to both timekeeping and compensation—as the original plaintiffs were. *Pierce v. Wyndam Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019).

Plaintiff's Motion fails to meet his burden of demonstrating a strong likelihood of similarity among potential opt-in plaintiffs.

## IV. PLAINTIFF'S MOTION SHOULD BE OVERRULED

### A. Plaintiff Failed to Meet the Heightened Evidentiary Standard Demonstrating a "Strong Likelihood"

Plaintiff's Motion should be denied because he has not met his burden of demonstrating a strong likelihood that he and others are similarly situated. The only evidence Plaintiff introduced in support of court-facilitated notice in this matter is in the form of a declaration – with a paragraph stating, "Merchants Security did not pay security officers/guards for this pre- or post- shift work and this time was not counted as hours worked for purposes of computing time." (*See* Thomas Adams Dec. ¶ 11.) Additionally, a few of the declarations include the additional allegation that they were not paid for travel from one security detail to another. (*Id*. at ¶ 12.) No additional evidence was provided to support these conclusory and self-serving statements. Notably, Plaintiff fails to offer any evidence as to how Merchants paid or didn't pay its employees. For example, there is no allegation in these declarations that Merchants manually or automatically manipulated time recorded as worked for employees and that this was standard timekeeping procedure for all employees. Nor is there any evidence explaining why these security guards were traveling from one security detail to another in the middle of a shift.

7

Plaintiff cites multiple Southern District of Ohio and the Sixth Circuit cases in support of his Motion. All these cases are distinguishable from the instant matter. Not only did the Plaintiffs in those cases introduce declarations explaining how their employers allegedly deducted overtime pay from their employees or otherwise acted in violation of the FLSA, but they also submitted *additional* evidence demonstrating how those allegedly unlawful timekeeping procedures were applied consistently to all Plaintiffs in the proposed collective. No such evidentiary showing has even been attempted in this case.

1. ***Bunger v. Surge Staffing, LLC*, S.D.Ohio No. 2:23-cv-2113, 2024 U.S. Dist. LEXIS 100912 (June 6, 2024).**

Plaintiff first cites to *Bunger* in support of the proposition that *any* merit-based arguments at the notice stage are improper. (Motion, at p. 9.) However, Plaintiff later explains that merits indeed play a role in a district court's analysis of the notice determination as to whether a named plaintiff is similarly situated to the other employees. (*Id.*, at p. 10.) This Court should consider the merits of the Plaintiff's evidence he has set forth in his Motion. For that reason, *Bunger* is distinguishable. In *Bunger*, the plaintiffs provided evidence in addition to their declarations in the form of paystubs demonstrating their employer's practice of manually reducing the plaintiffs pay based on hours worked. *Bunger* at *9. No such evidence has been introduced here. Additionally, in *Bunger*, there were allegations and evidence that there was a common practice of the Defendant overriding timecards. *Id*. Whether it be in the form of manually overriding a missed lunch break or simply manipulating the timecards themselves, no such allegations have been made in the instant case, nor have they been supported by any evidence.

8

**2. *Gudger v. Carecore Health, LLC*, S.D.Ohio No. 3:22-cv-239, 2025 U.S. Dist. LEXIS 86246 (May 6, 2025).**

The Plaintiff's next cite *Gudger*. In *Gudger*, the plaintiffs alleged that the defendant automatically deducted a thirty-minute unpaid meal break each day, but employees often did not have time to take a thirty-minute meal break. *Id.* at *3. Again, no such allegation has been made in this case, and there is no evidence on the record that Merchants automatically deducted anything from its employees.

In support of their claims in *Gudger*, the plaintiffs not only offered several declarations outlining their allegations, but they submitted additional evidence in the form of representative samples of the defendant's alleged unlawful practice and the defendant's handbooks which demonstrated identical meal break and timekeeping policies across all the defendant's facilities. *Id*. The *Gudger* court found that, "together, this evidence established that Named Plaintiffs have satisfied the burden of showing a '*strong likelihood*' that those employees are similarly situated to the plaintiffs themselves" at the court-facilitated notice step. *Id*. at *7-8. Here, the Plaintiff's evidence falls short of heightened "strong likelihood" standard.

**3. Murphy v. Kettering Adventist Healthcare, S.D.Ohio No. 3:23-cv-69, 2023 U.S. Dist. LEXIS 181430 (Oct. 5, 2023).**

In *Murphy*, the court explained that in determining whether a named plaintiff is similarly situated, courts look to factors such as whether the opt-ins performed the same tasks and were **subject to the same timekeeping policies**. *Id*. The facts supporting court-facilitated notice in *Murphy* are easily distinguishable from the facts in this case. In *Murphy*, the employer's timekeeping systems used from 2012 until February 2023 allegedly automatically deducted 30-minutes from an employee's recorded work hours

9

for their unpaid meal break. *Id*. at *4. Employees were required to let management know if they anticipated a missed meal break and they had to record the missed meal break in the timekeeping system. *Id*. They were all subject to this same timekeeping policy. "Murphy has shown, for the purposes of the court-facilitated notice inquiry, that there was a common policy of requiring employees to notify their managers if they were going to be unable to take a meal break and those managers either actively discourage employees from reporting that fact or overrode attempts to be compensated for that time." *Id*. at *17.

Here, there is no detailed allegation or evidence that Merchants deducted any time recorded as worked by its employees, or had any other policy or systematic practice that violates the FLSA. As previously explained, Merchants utilized three different timekeeping procedures for its employees since March of 2022. During that time, an employee may have recorded their time worked, including any pre or post shift pass-down, by calling an automated number and entering their employee ID number, clocking in or out on a phone application, or by calling Merchants Accounting and Payroll Manager directly. (Wead Dec., ¶¶ 7-14.) For these reasons, the Plaintiff and potential opt-ins are too factually dissimilar as to timekeeping procedures to satisfy *Clark's* strong likelihood standard.

### 4. *Gifford v. Northwood Healthcare Group, LLC*, S.D.Ohio No. 2:22-cv-4389, 2023 U.S. Dist. LEXIS 146707 (Aug. 21, 2023).

Plaintiff also cites to *Gifford* in their Motion. (Motion at p. 11.) The *Gifford* court explained that "[t]he Sixth Circuit instructs that the "strong likelihood" standard is akin to the well-known preliminary injunction test, which requires that the "movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision." *Gifford at *9.* A plaintiff shows a strong likelihood of success when her evidence raises questions "so serious, substantial, difficult, and

doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Gifford* at *9 (citing *Stryker Empl. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023).(defining "strong likelihood of success on the merits" in the preliminary injunction context) (quotation and citation omitted). A strong likelihood of success is "greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Gifford* at *9 citing *Clark*, at *1011. "To the extent practicable, therefore, court-approved notice of the suit should be sent only to employees who are "*in fact*" similarly situated." *Gifford* at *7.

In *Gifford*, defendants routinely deducted a 30-minute meal break from hours-worked, even when patient care responsibilities interrupted meal breaks or employees were not able to stop for a meal break, resulting in unpaid overtime wages. *Gifford* at *10. In support of the motion for court-facilitated notice, the plaintiff in *Gifford* submitted evidence in the form of several declarations in addition to evidence demonstrating that all six defendant facilities were shown to have identical employee handbooks, with identical written policies on overtime compensation and meal breaks. *Gifford* at *11. The *Gifford* court determined that the "evidence established to a certain degree of probability that Ms. Gifford, the current opt-ins, and the Potential Plaintiffs performed the same tasks, were subject to the same policies, and are unified by a common theory underlying their causes of action." *Id*.

Again, Plaintiff in this matter has not provided sufficient evidence to support court-facilitated notice in this matter, as Plaintiffs have offered no evidence of the actual policies and practices applicable to them, and the evidence introduced by Merchants establishes – without rebuttal – that the timekeeping procedures applicable to Plaintiff and potential

11

Op-in Plaintiffs are too factually dissimilar to satisfy the heightened standard of strong likelihood as set forth in *Clark*.

> 5. ***Polen v. JSW Steel United States Ohio, Inc.*, 699 F. Supp. 3d 622, 629 (S.D.Ohio 2023).**

In *Polen*, the court was faced with a similar allegation that shift workers were not paid for their time preparing for a shift. *Polen* at *629. However, a closer look at the declarations reviewed by the court again reveals a distinguishing element to the instant case. *Id*. Indeed, the declarants in *Polen* alleged that they clocked-in approximately 30 minutes prior to their shift, but that ***management manually deducted that time from their pay***. *Id*. This was a practice commonly alleged among the declarants.

Here, the declarations submitted as evidence fail to offer any explanation whatsoever of how Merchants deprived these former employees of their overtime pay. The declarations simply allege that employees were simply "not paid" for their shift-change. There is no allegation that these former employees clocked-in or clocked-out and their recorded time was manipulated in any way by Merchants. This evidence, without more, falls short of the heightened standard in *Clark*. Plaintiff has not met that burden and his Motion should be denied.

> 6. ***Morrison v. Columbus Family Health Care LLC*, 672 F. Supp. 3d 524, 530 (S.D.Ohio 2023).**

Plaintiff finally cites to *Morrison*. However, Morrison was pre-*Clark* and did not apply the heightened "strong likelihood" standard of similarly situated" which now applies. *Morrison*, generally. The court in *Morrison* only required a "modest" factual showing of evidence. *Morrison* at *529. For that reason, *Morrison* is not instructive as to whether the plaintiffs in the instant case are similarly situated. Regardless, the evidence submitted in

*Morrison* was more than just a declaration, it included timesheets demonstrating time the Plaintiffs spent "clocked-in" but were not paid and paystubs reflecting the same. *Morrison* at *530. No such evidence has been introduced by the Plaintiff in his Motion, and it must therefore be denied.

### B. Plaintiff and Putative Class Members are Not Similarly Situated

As previously explained, the Plaintiff in the instant matter is unable to establish a strong likelihood that he and others are similarly situated. Plaintiff provides only a self-serving, conclusory allegation that he was not paid for shift change before and after a scheduled shift. Plaintiff provides no additional evidence or support that Merchants violated the FLSA in failing to pay its non-exempt employees overtime wages. In fact, in contrast to a majority of the cases cited by the Plaintiff, he fails to state the amount of time that Merchants allegedly failed to pay its employees. (See, e.g., *Gifford*, 2023 WL 5352509, at *2, (alleging defendant automatically applied 30-minute meal break deduction); *Gudger*, 2025 WL 1311274, at *2, (alleging that defendant automatically deducted a thirty-minute meal break each day); *Murphy*, 2023 WL 6536893, at *4, (alleging timekeeping systems used by defendant automatically deducted 30-minutes from an employee's recorded work hours for their unpaid meal break).

A few of the submitted declarations include the additional unsupported allegation that Merchants maintains an unlawful policy and/or practice and did not pay its employees for time spent traveling from one security detail to another. (Motion at *13.) However, this allegation is only shared by a few of the declarants, already demonstrating a dissimilarity in the proposed collective. Additionally, these declarations fail to provide any evidence as to what Merchants' policy was that had these guards traveling from one security detail to

13

another. This allegation, without more, is vague and wholly insufficient to satisfy the strong likelihood standard set forth in *Clark*. For these reasons, Plaintiff's Motion for Court-Facilitated Notice as to employees that worked at more than one location in any workday, should be denied.

### C. Plaintiff's Proposed Notice is Improper

#### 1. The Notice Fails to Inform Recipients of Their Right to Retain Their Own Counsel.

Potential opt-in plaintiffs should be informed of their right to retain alternative counsel. As the proposed notice currently reads, "If you join, the lawyers listed on this Notice will represent you" and under an instruction of how to join the case it states, "Please note: You are not a member of the Case until you return the enclosed Consent Form, and the Form is filed with the Court by Plaintiff's counsel." (Proposed Notice at p. 1-2.) Finally, on the signature form, it states the following:

> "By my signature below, I designate Named Plaintiff (Thomas Adams) and his attorneys at the law firm of Coffman Legal, LLC to make decisions on my behalf concerning the litigation, the manner and method of conducting this litigation, and decisions regarding settlement, attorneys' fees, and expenses and all other matters pertaining to this lawsuit."

(*Id*. at p. 3).

Ohio courts have held that informing plaintiffs of their right to choose their own counsel is an "appropriate element in a notice." *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1072 (S.D. Ohio 2016) (quoting *Heaps v. Safelite Solutions, LLC*, Case No. 2:10-cv-729, 2011 U.S. Dist. LEXIS 40089, at *22-23 (S.D. Ohio April 5, 2011)); see also *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 898 (S.D.Ohio 2018). For these reasons, this Court should find that the proposed notice must inform potential opt-in plaintiffs of their right to retain their own counsel.

### 2. The Notice Does Not Inform Recipients of Potential Liability for Costs.

While the proposed notice informs recipients that they may be entitled to any monies recovered in the action, it fails to inform them that they may be liable for costs if Merchants were to prevail. (*Id*. at p. 1.). In *Murphy*, this court was faced with an identical scenario and held that notice "must apprise opt-in plaintiffs that, if they decide to opt-in to this suit, they may be required to pay Defendants cost if Defendants prevail." *Murphy* at *24-25; see also *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011).) For those reasons, this Court should find that the proposed notice must inform potential opt-in plaintiffs of potential liability for costs.

### 3. The Notice Period Should be Limited to 45 Days.

In its current form, the proposed notice suggests a notice period of 90 days. However, counsel for Plaintiff has already made clear of its successes in soliciting individuals to join this action. (Motion at p. 3.) Additionally, unlike the facts of *Murphy* which included a potential collective of employees throughout the entire Kettering Health Network, for this action, a 45-day notice period would be more than sufficient to provide current and former employees of Merchants notice of this action.

## V. CONCLUSION

For these reasons, Plaintiff's Motion for Court-Facilitated Notice to Potential Opt-in Plaintiffs should be denied.

176133588v2

Respectfully submitted,

 s/ Courtney N. Strickland
Timothy G. Pepper (0071076)
    Trial Counsel
Courtney N. Strickland (0102362)
TAFT STETTINIUS & HOLLISTER LLP
40 North Main Street, Suite 1700
Dayton, Ohio 45423
Phone:  (937) 641-1740
pepper@taftlaw.com
cstrickland@taftlaw.com

*Counsel for Defendant Merchants Security Service of Dayton, Ohio, Inc.*

## CERTIFICATE OF SERVICE

I certify that on September 4, 2025, I electronically filed the foregoing with the Court using the Court's CM/ECF system, with service of this filing being made on all ECF-registered counsel of record.

 s/ Courtney N. Strickland
Courtney N. Strickland (0102362)

176133588v2